# **EXHIBIT A**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

------------------------------------- x
OFFICIAL COMMITTEE OF UNSECURED :
CREDITORS OF OWENS CORNING, et al., :
                                    :
          Appellant,                :
                                    :
     v.                             :
                                    : Case No. AP-04-906 (JPF)
OFFICIAL COMMITTEE OF ASBESTOS      :
CLAIMANTS OF OWENS CORNING, et al., :
                                    :
          Appellee.                 :
                                    :
------------------------------------- x

## SUPPLEMENTAL BRIEF OF APPELLANT
## OFFICIAL COMMITTEE OF UNSECURED CREDITORS
## ON APPEAL OF STRUCTURAL RELIEF ORDER

Lowell Gordon Harriss
James I. McClammy
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York  10017

William H. Sudell, Jr. (I.D. No. 463
Eric D. Schwartz (I.D. No. 3134)
Gregory T. Donilon (I.D. No. 4244)
MORRIS, NICHOLS, ARSHT &
TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347

Attorneys for Appellant Official Committee of
Unsecured Creditors of Owens Corning, et al.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------- x
OFFICIAL COMMITTEE OF UNSECURED      :
CREDITORS OF OWENS CORNING, et al.,  :
                                     :
                 Appellant,          :
                                     :
         v.                          :
                                     :  Case No. AP-04-906 (JPF)
OFFICIAL COMMITTEE OF ASBESTOS       :
CLAIMANTS OF OWENS CORNING, et al.,  :
                                     :
                 Appellee.           :
                                     :
---------------------------------- x

### SUPPLEMENTAL BRIEF OF APPELLANT OFFICIAL COMMITTEE OF UNSECURED CREDITORS ON APPEAL OF STRUCTURAL RELIEF ORDER

Appellant Official Committee of Unsecured Creditors ("Commercial Committee") submits the Supplemental Brief in support of its appeal of the Structural Relief Order in accordance with the Court's order of April __, 2005.

### BACKGROUND

The Commercial Committee sought what it termed "structural relief" so this insolvent Chapter 11 case could be negotiated by the actual economic interests. The Commercial Committee asserted there are conflicts among the actual economic interests of groups of asbestos claimants; that the Commercial Committee was prevented from negotiating with the actual economic interests of creditors appointed to the Asbestos Committee; and that structural relief was required to provide unconflicted representation to the actual economic interests by removing the conflicted, self-interested Law Firms,

who had displaced the U.S. Trustee's appointees from the Asbestos Committee. The Commercial Committee has appealed the order denying its Motion for Structural Relief and appellant and appellees have filed briefs.

On December 2, 2004, the United States Court of Appeals for the Third Circuit filed an opinion in In re Combustion Engineering, Inc., 391 F.3d 190 (3d Cir. 2004). This opinion is certainly significant, perhaps monumental, for "asbestos Chapter 11s." It is the first decision of the Court of Appeals analyzing and ruling on the substantive and procedural legality of a confirmed plan of reorganization in an "asbestos Chapter 11"—a Chapter 11 reorganization proceeding necessitated substantially or predominantly by, and having to deal with, asbestos claims. That Court for the first time addressed some of the issues, relationships, and legal principles that are inherent in the many "asbestos Chapter 11s" pending within this Circuit, including the Owens Corning case.

The Combustion Engineering opinion addressed substantive and procedural issues in a particular "asbestos pre-pack." The Court of Appeals' analysis and rulings, however, are not so limited. Rather, they have direct application and relevance to the substance and process of all "asbestos Chapter 11s." And, as shown below, the Court of Appeals' analysis and rulings in Combustion Engineering endorse fundamental reasons for, and demonstrate the propriety of and need for, structural relief in this "asbestos Chapter 11," as urged by the Commercial Committee in the pending appeal.

## ARGUMENT

The Combustion Engineering decision employed three major analyses that are directly pertinent to the Commercial Committee's appeal of the Structural Relief order.

That Court acknowledged and identified conflicts of economic interest among asbestos claimants. The existence of these conflicts, the Court of Appeals held, dooms a confirmed plan of reorganization if the negotiating "structure" of a reorganization proceeding is "inadequate" to permit those groups separate participation in all stages of the negotiation. Finally, the Court of Appeals stressed that "asbestos" is no rationale to ignore or to distort the law.

A. The Third Circuit Agrees that Economic Interests Among Asbestos Claimants in an Insolvent Chapter 11 Conflict

The Commercial Committee's Motion for Structural Relief pointed to the objectively different economic interests among a few identifiable groupings of asbestos claimants. Indeed, no one has contested that there are objectively different economic interests among these groups of asbestos claimants. The objectively rational economic interests of some of those groupings are identical to the economic interests of commercial creditors, and therefore made them, rationally and objectively, allies of commercial creditors in plan negotiations. The Commercial Committee showed that it was structurally prevented from negotiating with those interests.

In reversing confirmation of the Combustion Engineering plan, the Court of Appeals also acknowledges and uses, as a substantive and procedural analytical tool, the fact that the economic interests among groups of asbestos claimants conflict in an insolvent "asbestos Chapter 11." Two of the groups identified by the Court of Appeals are similar to those identified by the Commercial Committee.

1. The Court Acknowledges the Conflicting Interests of "Malignant" and "Non-Malignant" Claimants

3

Relying on the independent RAND study of 2002 and other learned articles, see Combustion Eng'g, 391 F.3d at 199 & n.3, 244, the Combustion Engineering opinion acknowledges the conflict between the severely injured but relatively few asbestos claimants (termed by that Court "malignant" claimants) and the vast majority of asbestos claimants (citing the RAND study's figures of 80% to 90%) with no real discernable injury (termed by that court "non-malignant" claimants). Id. at 244. The Court of Appeals identified the conflicting economic interests between "malignant" and "non-malignant" claimants. Id. Nor may any federal court within the Third Circuit fail to acknowledge what the Third Circuit acknowledged in Combustion Engineering—that there is conflict between "malignant" and "non-malignant" claimants, see id., allocating what the Third Circuit itself wrote was a "limited fund," id. at 238.

In seeking Structural Relief, the Commercial Committee, relying upon the same RAND study as had the Court of Appeals, pointed to the similar, objectively identifiable, conflict of economic interest between "impaired" and "unimpaired" groups of asbestos claimants. In view of the Combustion Engineering decision, the fact of the distinct economic interests of "malignancy/impaired" and "non-malignancy/unimpaired" claimants cannot be contested.

"Malignancy/impaired" claimants were the majority of the U.S. Trustee-appointed members of the Asbestos Committee before that distinct economic interest was unofficially but completely displaced by Law Firms with no undivided loyalty to "malignancy/impaired" claimants and an entirely different and conflicting economic interest.

4

2. The Court of Appeals Acknowledged the Conflict
Between "Settlement" and "Non-Settlement" Claimants

The Commercial Committee's motion for Structural Relief also pointed to the objectively different economic interests between the approximately 62,000 asbestos claimants who had finally settled with Owens Corning pre-petition and those asbestos claimants with contingent and unliquidated claims. The Commercial Committee called these claimants "contract claimants" who had fixed, liquidated claims. Those claimants who had not settled with Owens Corning pre-petition were called "tort claimants." These tort claimants have contingent, unliquidated claims. The Commercial Committee showed that the 62,000 "contract claimants" had rational economic interests identical to those of the commercial creditors, and that, rationally and objectively, the economic interests of both were highly adverse to those of the "non-malignant/unimpaired" claimants and others.

In reversing the confirmation order in Combustion Engineering, the Court of Appeals acknowledged the objectively distinct economic interests of asbestos claimants with rights arising from a pre-petition settlement (termed by the Court of Appeals "settlement" claimants) and those who had no such rights (termed "non-settlement" claimants). Some of the conflict arose from the $400 million pre-petition transfer for the benefit of "settlement" claimants, which transfer was an obvious voidable preference. See id. at 240-41. That particular conflict in Combustion Engineering between "settlement" claimants who would resist "non-settlement" claimants recovering most of

the $400 million transfer is not involved in this case.[1] But the Court of Appeals did recognize there were different economic interests between asbestos claimants with contract rights and those with contingent, unliquidated tort claims to be dealt with in a trust. See id.

A majority of the U.S. Trustee-appointed members of the Asbestos Committee had contract claims for specific dollar amounts—identical to most commercial claims. The 62,000 contract claimants shared identical economic interests with contract creditors, including an interest in opposing the claims of the numerous non-malignant and unimpaired asbestos claimants. The Commercial Committee was prevented from negotiating with this identifiable economic interest among asbestos claimants because those with that interest were unofficially but completely displaced from the Asbestos Committee by Law Firms with no undivided loyalty to "contract claimants" and with different and conflicting economic interests.

---

[1] In one respect, however, the portion of the Combustion Engineering opinion dealing with the obvious voidable preference is highly pertinent to this case. A provision of the Combustion Engineering plan provided for a release of the preference claim, which would only benefit the "settlement" claimants and which they were able to have the single voting class of all asbestos claimants approve, courtesy of their artificially arranged "stub claims" for voting purposes. See Combustion Eng'g, 391 F.3d at 244-45. The Court of Appeals looked askance at this provision (an obvious conflict between the interests of "settlement' and "non-settlement" claimants), even though the provision had been dropped from the plan at the confirmation hearing. In reversing, the Court of Appeals held the presence of this provision infected the whole previous process. See id. at 245.

In the Owens Corning case, and directly involved in the Commercial Committee's appeal of the Structural Relief Order, is an equally self-serving "release" provision that is more reprehensible than was attempted in Combustion Engineering. Law firms are defendants in pending preference/fraudulent conveyance actions that seek to recover, only from these law firms, $160 to $400 million. Under the proposed plan, asbestos and commercial creditors would share all recoveries from law firms. The Law Firms, already with numerous conflicts but still acting as the Asbestos Committee, have arranged for a new condition that would release the claims against themselves, even though the prosecution of that suit against law firms would benefit the law firms' own clients.

6

B.  The Court of Appeals Requires Structural and
Representational Integrity in "Asbestos Chapter 11s"

Precisely because groups of asbestos claimants had differing and conflicting economic interests, the Court of Appeals in Combustion Engineering reversed the confirmation order specifically because of "the structural inadequacy" of the conflicting economic interests (there, settlement claimants, non-settlement claimants, malignancy claimants, non-malignancy claimants, and future claimants) not being involved in all phases of the process. See id. at 245. The Court of Appeals cited "Ortiz, 527 U.S. at 855-57," id., referring to the Supreme Court's decision in Ortiz v. Fibreboard Corp., 527 U.S. 815 (1999). In the cited portion of the Ortiz decision—a "limited fund" class action—the Supreme Court demanded "structural assurance" through separately represented sub-classes of asbestos claimants with differing economic interests.

The Court of Appeals specifically endorsed (relying on the same page citations as the Commercial Committee in its Structural Relief Motion) as applicable to all "asbestos Chapter 11s" what the Commercial Committee contends is applicable in this asbestos Chapter 11 case. And, the Court of Appeals required in the Combustion Engineering insolvent "asbestos Chapter 11" what the Supreme Court held in Ortiz was required in a "limited fund" asbestos class action: separate counsel for separate asbestos interests "to eliminate conflicting interests of counsel." 527 U.S. at 857.

These are precisely the points raised by the Commercial Committee and why the motion is styled one for structural relief. Our legal system of collective litigation is highly dependent on hard, honest negotiation to resolve the conflicting interests of thousands of individuals, whether in class actions or in corporate reorganizations.

7

Neither system will work as intended unless the structures used in those systems (classes and sub-classes with separate counsel in class actions; committees and separate committees and counsel in corporate reorganizations) provide for separate representation of conflicting economic interests. The absence of "structural assurance", as the Supreme Court wrote in <u>Ortiz</u>, in "limited fund" asbestos class actions, or the presence of "structural inadequacy," as the Third Circuit wrote in <u>Combustion Engineering</u>, in insolvent asbestos reorganizations, dooms the product of the flawed structures.

C. <u>The Law Applies</u>

"Asbestos" is a huge problem for the legal system. Repeated calls by the judiciary for a national legislative solution have not produced legislation. Federal district courts (via the JPML) have, in effect, been relieved of the crushing and boring burden of administering asbestos litigation, save for the admirably heroic efforts of Judge Weiner. "Asbestos" is now migrating to the bankruptcy system, and mostly to venues within the Third Circuit. No doubt deals are being negotiated ("sausage" is being made) by flawed structures in some of these "asbestos Chapter 11s" in the hope that no one will appeal and shine a light on who allocated the "limited fund" and how.

But in its <u>Combustion Engineering</u> opinion, the Third Circuit made crystal clear that it would apply the law as it exists to "asbestos Chapter 11s." The Court of Appeals refused to alter or to amend the law, no matter how convenient or attractive the results, just so the bankrupted system could be done with the "asbestos problem." <u>See</u> 391 F.3d at 200-01. The Court of Appeals even refused to turn a blind eye to a "structural inadequacy" when the appropriate party had not appealed. <u>See id.</u> at 245 (noting

8

violation of even minimal Due Process to future claimants from having no role in the initial stages of negotiation, even though Future Claimants' Representative thought end product of negotiations was fair; had not appealed, and was an appellee).

As complex and bad a legal problem as "asbestos" may be, special "asbestos only" bankruptcy law will not be created or tolerated: that is the overriding message and direction of Combustion Engineering. Nor should this seem unexpected or unusual. The Third Circuit refused to turn a blind eye or to create a special "asbestos class action" law to solve or to deal with "asbestos." See Georgine v. Amchem Prods., Inc., 83 F.3d 610 (3d Cir. 1996), aff'd sub nom., Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997).

With this overriding message and direction of Combustion Engineering, the Commercial Committee respectfully requests that this Court similarly apply the law. The U.S. Trustee determined that the *individuals* named to the Asbestos Committee had the types of claims that represented a cross-section of all asbestos claimants. These individuals were unofficially, but completely replaced, by Law Firms with interests that differed from and conflicted with the interests of the individual members they purport to represent. The law to be applied is uniform: the Law Firms cannot be where they are, or do what they have done and are doing, because they are absolutely precluded by binding ethical rules. None of the appellees ever disputed the existence, or the application, of these rules. Nor can any appellee dispute that the Third Circuit just reversed a confirmed plan of reorganization in an "asbestos Chapter 11" because of "structural inadequacy." The structural relief sought by the Commercial Committee should be granted immediately.

## CONCLUSION

For the reasons set forth above and in its initial and reply memoranda of law, the Commercial Committee requests the order on appeal be reversed.

Dated: April __, 2005
       Wilmington, Delaware

>                    Respectfully Submitted,
>
>                    DAVIS POLK & WARDWELL
>
>                    Lowell Gordon Harriss
>                    James I. McClammy
>                    450 Lexington Avenue
>                    New York, NY 10017
>                    (212) 450-4000
>
>                    - and -
>
>                    MORRIS, NICHOLS, ARSHT &
>                    TUNNELL
>
>                    _____
>                    William H. Sudell, Jr. (I.D. No. 463)
>                    Eric D. Schwartz (I.D. No. 3134)
>                    Gregory T. Donilon (I.D. No. 4244)
>                    1201 North Market Street
>                    P.O. Box 1347
>                    Wilmington, DE 19899
>                    (302) 658-9200
>
>                    Attorneys for Appellant Official
>                    Committee of Unsecured Creditors
>                    of Owens Corning, et al.